[Civ. No. 3825.   Second Appellate District, Division Two.—June 16, 1923.]

## FRANK F. PELLISSIER et al., Appellants, v. PAN-AMERICAN PETROLEUM COMPANY, Respondent.

[1] LEASES—BREACH OF COVENANT TO DRILL FOR OIL—TERMINATION OF LEASE—RIGHTS OF LESSORS.—Where a lease of oil land for a term of years specifies that the lessee shall commence operations within six months and thereafter prosecute, with reasonable diligence, the work of drilling, and further provides that in the event the lessee fails to perform any of the covenants of the lease "and such failure shall continue for a period of thirty days after personal service of a written notice thereof upon the lessee . . . this indenture of lease shall, at the option of the lessors, become immediately null and void, and the lessors shall thereupon have the right . . . to re-enter upon the land hereby leased, and remove all persons therefrom, provided, however, that such re-entry, if made, shall be the sole and exclusive remedy of the lessors," such provisions are intended to be for the benefit of the lessors and might be waived by them; and if the lessee fails to drill as agreed no other or additional obligation rests upon him because of such failure than that specified in the lease; and, upon such failure, if the lessors do not terminate the lease in the manner specified (and the lessee does not abandon the premises as provided in the lease), the lease remains unimpaired, and the mere lapse of time can in no way affect its life.

[2] ID.—EXTENSION OF AGREEMENT—ELECTION OF LESSEE TO PRESERVE RIGHTS — RIGHTS OF LESSOR — COMPENSATION. — Where, after the lessee has failed to commence operations within the time specified, the parties entered into a written stipulation wherein the lessors agree "that in lieu of commencing and prosecuting operations for

the drilling of a well . . . the lessee may, if he shall so elect, pay to the lessor" on a specified day "of each and every calendar month, for an additional period of six (6) months," commencing on a specified date, "as and for rental for said land," a specified sum per month, "and such payment so made from month to month, shall relieve the lessee of and from all obligations to commence or prosecute drilling or other operations upon said land during such month," the lessors acquire no new rights except to the rental money received by them; and where the lessee, after having paid the sum specified for a number of months, fails to elect whether or not he will keep his right to begin drilling alive, by the payment of the monthly sum specified, the lessors are not entitled to maintain an action to recover such sum per month for each month the lessee remains in possession.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. P. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

Geo. J. Denis for Appellants.

Olin Wellborn, Jr., and Stephen Monteleone for Respondent.

CRAIG, J.—The appellants, Frank F. Pellissier and his wife, leased certain lands belonging to them to one E. L. Doheny, as lessee, for the exploration of oil and gas. The lease was executed on the tenth day of October, 1917, and was subsequently assigned by the lessee to the Pan-American Petroleum Company, a corporation, the respondent herein. Neither the lessee nor his assignee, the Pan-American Petroleum Company ever commenced operations for the drilling of a well upon said land. Extensions of time for commencing said drilling operations were granted to the lessee by the lessors up to the tenth day of October, 1919. On November 24, 1919, plaintiffs executed to respondent's assignor a certain indenture in writing, under which four payments were made to the lessors, being for the months of October, November, December, and January. The fourth payment was made on January 12, 1920.

No payments were made for the months of February and March, 1920. On the twenty-first or twenty-second day of April, 1920, the respondent, Pan-American Petroleum Company, tendered to the appellants a quitclaim deed to the

land. This action was brought to recover the rent alleged
to be due for said months of February and March, during
which months the lessee retained possession of the land.

The case was tried by the court sitting without a jury.
The court, among other things, found as follows: "That
after the execution and delivery of said indenture dated
November 24, 1919, defendant made four monthly payments
of $833.33 each under and pursuant to said indenture and
thereby exercised its right to extend the time in which to
commence drilling operations up to the eighteenth day of
February, 1920; that thereafter defendant retained all
rights and privileges granted by said lease up to the tenth
day of April, 1920, but did not retain, nor did it elect to
retain, any rights or privileges granted by said indenture
dated November 24, 1919, beyond the tenth day of February,
1920, and accordingly failed and refused to make any
further payments thereunder; that there did not become
due or payable from defendant to plaintiffs, or either ot
them, on the tenth day of April, 1920, or at any other time,
the sum of $1666.66, or any other sum, nor any interest
whatever, and there is not due or owing from defendant
to plaintiffs, or either of them, the sum of $1666.66, or
any part thereof or any interest whatever thereon."

Judgment was thereupon rendered in favor of defendant
that plaintiffs take nothing by their action, from which
judgment plaintiffs appeal. Appellants' contention is that
the court erred in its construction of the terms and effect
of the last extension agreement or instrument of Novem-
ber 24, 1919, and also of the lease itself.

The following provisions of the lease and extension are
essential to the determination of the appeal. The following
is quoted from the lease: "The lessee shall, subject to the
exceptions hereinafter contained, commence operations
preparatory to the work of drilling one well upon said land
within six months from the date thereof, and thereafter
prosecute, with reasonable diligence, the work of drilling
such well for the production of petroleum therefrom until
petroleum in paying. quantities, as hereinafter defined, is
found, or such well is abandoned as hereinafter provided."
Also, "That in the event that the lessee shall, at any time
during the term hereof, fail to perform any of his covenants

62 Cal. App.—35

and agreements contained in subdivisions 1, 11 and 111, of the lessee's covenants herein and such failure shall continue for a period of thirty days after the personal service of a written notice thereof upon the lessee, or his heirs or assigns, specifying the particulars in which such failure has occurred, this indenture of lease shall, at the option of the lessors, become immediately null and void and the lessors shall thereupon have the right (subject, however, to the provisions in paragraph 4 of the lessors' covenants herein) to re-enter upon the land hereby leased, and remove all persons therefrom, provided, however, that such re-entry, if made, shall be the sole and exclusive remedy of the lessors for the breach on the part of the lessee of his said covenants or agreements in said paragraphs contained; that in the event the lessee shall desire to abandon this lease and terminate all of his obligations hereunder, he shall have the right so to do by serving written notice of such abandonment upon the lessors and delivering and yielding up to the lessors the possession of all of the land hereby leased, except so much thereof as the lessee may be entitled to retain under the provisions of paragraph fourth of the lessee's covenants herein, and delivering to the lessors a quitclaim deed executed and acknowledged by the lessee, releasing, remising and quitclaiming unto the lessors all of the land hereby leased, except so much thereof as the lessee may be entitled to retain under the provisions of said paragraph fourth.''

The last extension agreement provides: ''Now, therefore, the lessors hereby agree that in lieu of commencing and prosecuting operations for the drilling of a well upon said land described in and leased by said indenture of lease, the lessee may, if he shall so elect, pay to the lessor on the 10th day of each and every calendar month, for an additional period of six (6) months, commencing on the 10th day of October, 1919, as and for rental for said land, the sum of Eight Hundred and Thirty-three Dollars and Thirty-three cents ($833.33) per month, and such payment so made from month to month, shall relieve the lessee of and from all obligations to commence or prosecute any drilling or other operations upon said land during such month.''

[1]    An analysis of this lease and the subsequent exten-

sion agreement indicates that the property was leased for a period of twenty years from October 10, 1917; and that the lessee bound himself to commence operations preparatory to drilling for oil within six months from the execution of the original agreement. It will not be disputed that this provision was intended to be for the benefit of the lessors and might be waived by them. If the lessee failed to prepare to drill as agreed, no other or additional obligation rested upon him because of such failure. The lessors might terminate the lease by serving the notice stipulated, but if they did not do so the lease would remain unimpaired. The lessee might abandon at any time by giving up possession and executing the quitclaim deed, etc., mentioned in the lease, yet, unless such action was taken, mere lapse of time could in no way affect its life.

Doubtless, if neither party did anything the lessee might at any time during the twenty-year period of the lease have begun to drill for oil and would then have been protected as still within the lease, provided he thereafter continued operations with reasonable diligence and did not permit himself to become otherwise delinquent.

[2] We now proceed to the next consideration, namely, what effect did the parties intend the last extension agreement to have upon the obligations and rights of the parties in respect to the matters here involved? Other extension agreements had been executed by which the lessors had given consent to the lessee's failure to begin operations. Under these, payments in the nature of rent had been made monthly by the respondent, beginning with April 3, 1918, and continuing until November 26, 1920. The last extension stipulates that the result of the payments under its terms so made "from month to month" shall be to "relieve the lessee of and from all obligations to commence and prosecute any drilling or other operations upon the land *during such month.*" (Italics ours.) One outstanding fact resulting from this provision is that under it each month is considered as a single period. The same stipulations apply to all six of the months included in the term covered by this last extension, but each one is segregated from the others so that if the lessor were to make one monthly payment of $833.33, his time to begin operations would only be extended for the particular month for which such

payment was made. Another thing which the language clearly indicates is that the purpose which actuated the parties to sign this agreement was to preserve the lessee's right to drill in the land in question. This was the only result accomplished. The lessors acquired no new rights except to the rental money received by them. Again, the lessee and not the lessors had the right to decide whether or not the last extension agreement should have any application. It is provided that certain things shall be done "if he shall so elect," reference being made to the lessee; and, lastly, his election is to be made monthly, and not for the entire period of six months treated as a single term. This conclusion logically follows from the recital, "such payments so made from month to month," and it necessarily results from the closing stipulation to the effect that each payment shall relieve the lessee from all obligations to drill "during such months." As the lessee had the right to elect each month during the period of six months whether or not he would keep his right to begin drilling alive, the only question remaining for determination is as to the manner in which his election was to be made. One way, and but one, is mentioned; that is, by the payment of $833.33 to the lessors on the tenth day of the month for which the lessee should desire to be relieved from the obligation to commence drilling.

We do not regard *McMillan* v. *Philadelphia Co.*, 159 Pa. St. 142 [28 Atl. 220], as a precedent in this case, because the lease there involved contained an express covenant requiring the lessee to pay a definite rental if it failed to do certain development work stipulated. The type of a lease which appellant refers to as the "or lease" is one in which the lessee agrees to drill or in lieu of drilling to pay a rental. The lease before us contains no covenant to that effect. The language used expressly makes it optional with the lessee to neither drill nor pay rent, pursuing which course he would, of course, forfeit all right under the lease should the lessors so elect. Courts have no right to alter the contract made by the parties to it by adding an agreement not incorporated therein. This the case of *Scott* v. *LaFayette*, 42 Ind. App. 614 [86 N. E. 495], does if, by the statement contained in the decision it is meant that the clause construed, although making it optional with

the lessee to allow the lease to lapse through failure to drill or pay rent, will, regardless of the language used, be held to stipulate that the lessee must either drill or pay rent. No other case cited or known to us holds that such an obligation will be read into a lease which has made no provision for it. The case of *Jackson* v. *O'Hara,* 183 Pa. St. 233 [38 Atl. 624], cited in *Scott* v. *LaFayette,* does not so decide. In that suit the lessee definitely promised to "complete one well on the premises from the date thereof," and in case of failure so to do, he covenanted to "pay as rental to the party of the first part for such delay, the sum of $50 per month, payable in advance." The opinion in *Scott* v. *LaFayette* is quite unsatisfactory in that no clear reason is given for the conclusion reached concerning the point here involved. The proposition is emphasized that no forfeiture clause on behalf of the lessor was contained in the lease. The court may have regarded it as inequitable that the rights provided in that regard were unequal and lacked reciprocity. The lease in the case at bar is not subject to this criticism. A court of equity has no occasion to apply a strained construction on this account, for the lessors are amply protected by a clause authorizing the termination of the lease by them in case the lessee failed to prepare to drill as agreed.

The judgment is affirmed.

Finlayson, P. J., and Works, J., concurred.